<u>NOT FOR PUBLICATION</u>

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                  :

ATAIN SPECIALTY INSURANCE CO.    :
                                    :

           Plaintiff,       :

                                    :     Case No. 3:16-cv-05129-BRM-LHG
           v.             :

                                    :       **OPINION**

NORTHEAST MOUNTAIN         :
GUIDING, LLC, *et al.*,           :

              :

         Defendants.    :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are Motions for Summary Judgment (ECF Nos. 70 & 73) filed by Plaintiff Atain Specialty Insurance Co. ("Atain") and Third-Party Defendants Donald Pachner, Pachner & Associates, LLC, and Pachner Risk Management (collectively, "Pachner"). Defendant Michael Manchester ("Manchester") opposes both motions. (ECF No. 80.) Defendants Northeast Mountain Guiding, LLC ("NMG"), Joseph Vulpis ("Vulpis"), and Bryan Enberg ("Enberg") also oppose both motions. (ECF No. 86.) Pachner supports part and opposes part of Atain's motion. (ECF No. 81.) Atain opposes part of Pachner's motion and takes no position as to the remainder. (ECF No. 85.)

Having reviewed the parties' submissions filed in connection with the motions and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Atain's motion is **DENIED** and Pachner's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Northeast Mountain Guiding and Its Guides

Vulpis is the founder and sole member of NMG, a limited liability company in the outdoor adventure and education industry.  (ECF No. 86-14 ¶ 4.)  Vulpis has significant training and experience, as well as multiple certifications, in the field in which NMG operates.  (ECF No. 86-14 ¶¶ 5-7.)  Enberg provided administrative assistance to NMG, developed a search and rescue training for NMG to provide to clients, and served as a mountaineering guide for NMG.  (ECF No. 86-15 ¶ 3.)  Manchester performed work for NMG as a Lead Backpacking Guide and Assistant Rock Guide.  (ECF No. 70-8, at 16:6-20.)

### B.  Pachner Procures Insurance from Atain for Northeast Mountain Guiding

Donald Pachner is the sole member of Pachner & Associates, LLC and Pachner Risk Management, LLC.  (ECF No. 73-3 ¶ 1.)  Donald Pachner and Pachner & Associates, LLC possess insurance broker licenses under New Jersey law.  (ECF No. 73-31, at 1-2.)

Vulpis retained Pachner to obtain general commercial liability insurance for NMG.  (ECF No. 73-3 ¶ 7.)  As part of this process, Pachner and Vulpis worked together to fill out an application (the "Application") for insurance.  (ECF No. 73-3 ¶¶ 8-10; ECF No. 73-33, at ATN000331-41.)  The Application required Vulpis to estimate NMG's gross revenues for the coming year.  (ECF No. 73-33, at ATN000332.)  On Pachner's advice, Vulpis checked the "No" box when answering the Application's question concerning whether NMG "hire[s] Concessionaires, Independent Contractors, or Subcontractors."  (ECF No. 73-33, at ATN 000334; ECF No. 73-12, at 221:11-222:11.)  As part of the Application, Vulpis initialed next to a requirement NMG (1) obtain from all participants an Atain-approved waiver of liability form, and (2) maintain those forms for three years.  (ECF No. 70-17, at ATN000339.)

In response to NMG's Application, Atain issued an insurance quote (the "Quote"), which Vulpis reviewed with Pachner. (ECF No. 72-1, at 233:24-234:23.) Among other things, the Quote contains a summary of several of the terms the Policy would contain. (ECF No. 73-37, at 2.)

Pachner procured insurance (the "Policy") from Atain for NMG. (ECF No. 73-3 ¶ 12.) The Policy limits coverage to "GUIDED MOUNTAINEERING INCLUDING TOP ROPE CLIMBING & RAPPELLING; GUIDED KAYAK TRIPS; GUIDED SNOWSHOEING; GUIDED HIKING/BACKPACKING INCLUDING CAMPING." (ECF No. 86-6, at Atain 47.) The Policy excludes coverage for injuries suffered "in the course of employment by or service to" NMG. (ECF No. 70-5, at ATN000402.)

### C. Manchester's Injury

On November 21, 2015, Manchester suffered an injury (the "Injury") while using certain equipment (the "Equipment") to engage in a certain activity (the "Activity"). Much of the dispute in this case centers on the proper characterization of the Activity and the Equipment. The essence of the Activity is that the participant uses the Equipment to move between two points. (ECF No. 73-12, at 16:2-7.) The evidence conflicts concerning whether the Equipment is a "Tyrolean Traverse" or a "Clifftop Zipline." (ECF No. 86-14 ¶¶ 33-36; ECF No. 73-12, at 75:1-10, 186:6-191:4.) Ziplines were derived from Tyrolean Traverses, but the differences are too fine for untrained individuals to differentiate between the two. (ECF No. 73-12, at 58:5-7.)

On November 21, 2015, three NMG guides—Christy DeMarco, Enberg, and Vulpis—went to Allamuchy State Park to test the Equipment NMG expected to offer in the future for its customers. Vulpis and the other three guides set up the Equipment. (ECF No. 86-14 ¶ 46.) Manchester was present at the time, and engaged in the Activity by traveling on the Equipment.

(ECF No. 86-14 ¶¶ 46-47.) While engaged in the Activity, Manchester suffered the Injury. (ECF No. 86-14 ¶ 47.)

### D. Litigation

Following his Injury, Manchester filed a state court negligence action against Vulpis, Enberg, and NMG. (ECF No. 1 ¶ 12.) NMG made a claim for coverage with Pachner and Atain. (ECF No. 86-14 ¶ 51-52.) When reporting the claim to Atain, Pachner described Manchester as an independent contractor for NMG. (ECF No. 70-21, at 161:11-13.)

Atain filed this coverage action against its Vulpis, Enberg, and NMG, and also joined Manchester as a defendant. (ECF No. 1 ¶ 1-5.) Atain seeks declaratory judgments against Vulpis, Enberg, NMG, and Manchester, authorizing Atain to disclaim coverage Manchester's Injury. (ECF No. 1 ¶¶ 31-51.) Additionally, Atain seeks a declaratory judgment voiding the Policy under common law rescission principles and the New Jersey Insurance Fraud Prevention Act, N.J. Stat. Ann. § 17:33A-1 *et seq.* (ECF No. 1 ¶¶ 52-65.)

Vulpis, Enberg, and NMG brought a third-party action against NMG's insurance broker Pachner, alleging Pachner's negligence caused any failure of coverage by Atain. (ECF No. 29 ¶¶ 28-34.) Manchester brought a similar action against Pachner. (ECF No. 28, at 3-7.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome

of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *See id.* at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the non[-]moving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J., dissenting). Once the movant adequately supports its motion pursuant to

Rule 56(c), the burden shifts to the non-moving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## III.    DECISION[1]

### A.    Coverage for "Guided Mountaineering"

Atain and Pachner both argue Manchester's Injury is not covered under the Policy because the Policy covers only "guided mountaineering," and Vulpis and Enberg both testified Manchester's Injury did not occur during a "guided" activity. (ECF No. 72-1, at 221:4-10; ECF No. 70-7, at 115:19-116:6.) Conflicting evidence prevents the Court from granting summary judgment. First, Vulpis's testimony was more nuanced than Atain and Pachner suggest. While Vulpis testified he would not consider the Activity to be "guided," Vulpis did consider the

---

1    The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

Activity to be "part of guided mountaineering." (ECF No. 72, at 115:22-116:2.) Second, Vulpis testified Manchester received training and instruction from both Vulpis and Enberg for the Activity immediately prior to Manchester's Injury. (ECF No. 72, at 85:20-86:12.) A reasonable jury could conclude Vulpis's and Enberg's training and instruction "guided" Manchester, who had little previous experience with the Equipment. (ECF No. 72, at 28:7-10.)

The Court is unpersuaded by Atain's and Pachner's argument alleging Vulpis's and Enberg's testimonies demonstrate the parties' "intent" the Policy not cover the Activity. "[W]hen interpreting an insurance contract, the basic rule is to determine the intention of the parties . . . ." *Simonetti v. Selective Ins. Co.*, 859 A.2d 694, 698 (N.J. Super. Ct. App. Div. 2004). While the contractual language is the Court's primary tool, the Court may consider evidence of the parties' intention beyond the four corners of the contract when, as here, the language of the insurance contract is ambiguous. *See, e.g.*, *Welcome v. Just Apts.*, No. L-9821-01, 2008 WL 2696252, at *3-4 (N.J. App. Div. July 11, 2008).

Vulpis's and Enberg's testimonies are two such pieces of evidence, but not the only evidence, of NMG's intent when agreeing to the Policy. Other evidence suggests NMG did intend the Policy to cover the Activity. For instance, Vulpis testified he considered the Activity to be "part of guided mountaineering." (ECF No. 72, at 115:22-116:2.) Enberg testified he understood a "guided" activity to be an activity in which there is "a guide who is leading the activity."[2] (ECF No. 70-7, at 115:17-18.) According to Vulpis's testimony, this is exactly what

---

2  Pachner also argues the Activity could not be "guided" as the Policy uses the term unless Vulpis or Enberg met the definition of "guide" in NMG's Guide Handbook—"specially trained and experienced mountaineers, climbers, instructors, and outdoor professionals for hire." (ECF No. 73-35, at 7.) The Court rejects this argument—which Pachner raises for the first time in a reply brief—because "arguments raised for first time in [a] reply brief will not be considered." *Washington v. Doran*, 717 F. App'x 151, 155 (3d Cir. 2017).

Were the Court to consider Pachner's argument on its merits, the argument would fail. First, Pachner offers no evidence the parties intended the Guide Handbook's definition of "guide"

happened. Vulpis and Enberg lead the Activity, instructing Manchester before Manchester participated. (ECF No. 72, at 85:20-86:12.) Manchester did not have the requisite training to serve as a guide on the Activity. (ECF No. 86-14 ¶ 11.) In light of this conflicting evidence, a genuine issue of material fact exists concerning whether or not the parties intended for the Policy to cover the Activity. Accordingly, the Court cannot grant summary judgment on this ground.

### B. Injury "In the Course of Employment . . . or Service"

Atain next argues the Court should grant it summary judgment because the Employer's Liability Exclusion precludes coverage for Manchester's Injury because Manchester was acting "in the course of employment by or service to" NMG. (ECF No. 70-5, at ATN000402.) Pachner[3] seeks summary judgment against Atain on this claim, arguing the Employer's Liability Exclusion does not apply. Neither party is entitled to summary judgment concerning the effect of the Employer's Liability Exclusion because the evidence conflicts concerning whether Manchester was, in fact, acting in the course of his NMG employment.

Several facts weigh in favor of finding Manchester was a participant acting outside the scope of his NMG employment at the time of his Injury. Manchester testified he had come to participate in the Activity because he "thought it would be fun." (ECF No. 70-8, at 61:25-62:1.) Vulpis testified similarly: Manchester "came just to travel along the Tyrolean traverse. He wanted to try it out." (ECF No. 72, at 85:13-14.) Manchester testified he never informed NMG

---

to govern the Policy's coverage for "guided" activities, nor any evidence the parties even considered the Guide Handbook's definition at the time Atain issued the Policy. Second, even if the Guide Handbook's definition did govern the Policy's coverage for "guided" activities, Vulpis and Enberg meet the definition. Both Vulpis and Enberg possess special training, and were available for hire. (ECF No. 86-14 ¶¶ 4-7; ECF No. 86-15 ¶¶ 2-3.) The Guide Handbook's definition does not require Manchester in fact have hired Vulpis or Enberg to guide Manchester on the day of the incident.

3 Manchester joins Pachner's arguments. (ECF No. 80, at 19.) NMG, Vulpis, and Enberg also join Pachner's arguments. (ECF No. 86, at 30.)

he would be attending the Activity and further testified NMG did not know he would be attending. (ECF No. 70-8, at 62:18-20, 68:5-7.) Manchester did not consider himself an employee or representative of Vulpis or Enberg at the time of the Injury. (ECF No. 70-8, at 20:10-19.)

However, other factors weigh in favor of finding Manchester was acting within the scope of his employment or service to NMG. Most importantly, Manchester acknowledged he performed work for NMG as a Lead Backpacking Guide and Assistant Rock Guide. (ECF No. 70-8, at 16:6-20.) Vulpis and Manchester both testified Manchester came to be at Allamuchy State Park on the date of his Injury because Vulpis posted an invitation to a Facebook group whose members consisted only of NMG guides and staff. (ECF No. 72, at 56:11-57:14; ECF No. 70-8, at 162:8-21.) Enberg testified although Manchester was not involved in setting up the Equipment and mostly observed others do so, Manchester did help Enberg "pull tension once, so just pull on a rope for me." (ECF No. 70-7, at 95:23-96:8.) Enberg also testified, "[A]s far as I know, we just there all volunteering and testing the system." (ECF No. 70-7, at 96:19-20.)

In short, the conflicting evidence creates a genuine issue of material fact. Accordingly, no party is entitled to summary judgment either for or against Atain's claim concerning whether the Employer's Liability Exclusion precludes coverage.

### C. Rescission of the Policy

Atain also argues it is entitled to rescind the Policy in light of NMG's material misrepresentations in the Application. Pachner argues the Court should grant summary judgment against Atain because Atain ratified the Policy despite knowing of the misrepresentations. The Court cannot grant summary judgment either for or against rescission because genuine issues of

material fact remain (1) concerning whether NMG knowingly misrepresented any material facts, and (2) about the factual bases for rescission.

"In the field of insurance, rescission has long been recognized as an available and necessary remedy to combat fraudulent behavior by an insured." *Rutgers Cas. Ins. Co. v. LaCroix*, 946 A.2d 1027, 1035 (N.J. 2008). "It is settled that a material factual misrepresentation made in an application for insurance may justify rescission [of the resulting insurance policy] if the insurer relied upon it to determine whether or not to issue the policy." *Citizens United Reciprocal Exch. v. Perez*, 121 A.2d 374, 378 (N.J. 2015). "Rescission voids the [insurance policy] *ab initio*, meaning that it is considered 'null from the beginning' and treated as if it does not exist for any purpose." *First Am. Title Ins. Co. v. Lawson*, 827 A.2d 230, 237 (N.J. 2003).

Rescission of an insurance policy for fraudulent misrepresentation is appropriate if four conditions are satisfied: (1) the applicant must make an "untruthful" representation to the insurer, (2) the representation must be "material to the particular risk assumed by the insurer," (3) the insurer must "actually and reasonably rel[y] upon [the representation] in the issuance of the policy," and (4) if the "insurance application . . . calls for subjective information," then "the insured [must] kn[o]w that the information was false when completing the application." *Id.*

> Examples of subjective information include when an insurer asks an insured to indicate a belief about the status of his or her health, or when . . . an insurer asks whether an applicant is aware of any circumstances which may result in a claim being made against the firm[.] [A] subjective question will not constitute equitable fraud if the question is directed toward probing the knowledge of the applicant and determining the state of his mind and . . . the answer is a correct statement of the applicant's knowledge and belief[.]

*Id.* (citations omitted).

A "mere oversight or honest mistake" will not support rescission. *Rutgers*, 945 A.2d at 1035 (quoting *Longobardi v. Chubb Ins. Co. of N.J.*, 582 A.2d 1257, 1261 (N.J. 1990)). "The lie

must be willful." *Longobardi*, 582 A.2d at 1261. The insurer bears the burden of demonstrating the applicant "knew and believed" the information provided on the application was false and "knowingly misrepresented" the information provided to be true, but need not demonstrate the applicant "harbored an intent to defraud." *Mass. Mut. Life Ins. Co. v. Manzo*, 584 A.2d 190, 195 (N.J. 1991).

### 1. Projected Revenues

First, Atain argues this Court should void the Policy because NMG materially misrepresented its projected revenues on its Application. The Court disagrees because the evidence, viewed in the light most favorable to non-movant NMG, precludes the Court from finding NMG knowingly[4] misrepresented its projected revenues.[5]

---

4 Because a genuine issue of material fact exists concerning whether NMG knowingly misrepresented its projected revenue, the Court need not decide (1) whether NMG's projected revenue was material to the particular risk assumed by the Atain, nor (2) whether Atain's remedy is limited to a retroactive increase in the Policy premium.

5 The Court declines to consider two of Atain's arguments concerning whether NMG knowingly misrepresented its projected revenues. First, Atain argues—for the first time in its reply brief (ECF No. 93, at 25)—Vulpis improperly projected zero revenue from NMG's Professional Services Division, which NMG had created shortly before applying for Atain's insurance. Second, Atain argues—again, for the first time in its reply brief (ECF No. 93, at 25-26)—even if NMG's revenue figures were reasonable at the time of the Application, NMG's failure to update the figures as circumstances changed constitutes a knowing misrepresentation. The Court will not consider either argument because an argument raised for the first time in a reply brief is waived. *See Haberle v. Borough of Nazareth*, 936 F.3d 138, 141 n.3 (3d Cir. 2019).

Were the Court to consider Atain's arguments on their merits, neither argument would prevail. With regard to revenue from NMG's newly created Professional Services Division, the Court notes, "[m]ost new businesses fail. Pretty much all studies agree on that." Thomas J. McIntyre, Note, *Discriminatory Opportunism: Why Undertaking Self-Employment to Mitigate Damages Creates Unique Challenges*, 45 Suffolk U. L. Rev. 549, 550 n.11 (2012) (quoting Scott A. Shane, *The Illusions of Entrepreneurship* 98 (2008)). That Vulpis projected no revenue from NMG's new venture is unsurprising. In conjunction with the other evidence and viewed in the light most favorable to non-movant NMG, a reasonable fact-finder could still determine Vulpis did not knowingly misrepresent NMG's projected revenue. With regard to NMG's failure to update its revenue figures as its circumstances changed, the evidence viewed in a light most favorable to NMG does not rule out the possibility NMG's

Atain argues the projected amount listed on the Application was substantially lower than NMG's actual revenue for the year preceding the Application and disproportionately less than the revenue NMG actually received in the Policy year. The Court declines to find these numerical discrepancies demonstrate a knowing misrepresentation. Vulpis testified several considerations left him doubtful NMG would succeed financially in the coming year when he filled out the Application for NMG. (ECF No. 86-14 ¶ 23.) First, Vulpis was divorcing his spouse, which he believed would impact NMG's ability to remain in business. (ECF No. 86-14 ¶ 23.) Second, Vulpis had hired new guides, and expected revenues would be lower while his new guides gained experience.[6] (ECF No. 86-14 ¶ 23.) Third, "a chronic, life-threatening auto-immune disease" hospitalized Vulpis shortly before he filed the Application, and he was "not sure [he] would live through" the year, "much less have any revenues in NMG." (ECF No. 86-14 ¶ 23.) Even taking those factors into account, the revenue Vulpis projected on the Application was approximately equal to NMG's annual revenue two years prior to the Application, and was slightly lower than the average of the revenue for the preceding three years. (ECF No. 86-14 ¶ 23.) Taking these facts in the light most favorable to NMG, a reasonable fact-finder could determine NMG did not knowingly misrepresent its projected income.

Atain also points to Vulpis's testimony about how he projected NMG's revenue by merely "guess[ing] what I thought we might do for the season" and answered "no" when asked if he did any math to figure out the projected revenue. (ECF No. 72-1, at 217:3-12.) Atain argues these answers demonstrate Vulpis did not make a good faith revenue projection. The Court

---

failure to update its Application was a "mere oversight or honest mistake." *Rutgers*, 945 A.2d at 1035 (quoting *Longobardi*, 582 A.2d at 1261).

[6] Atain argues the existence of new hires indicates NMG's business was growing, and is reason to expect a good faith estimate of NMG's revenues would have been higher. While Atain's argument is one permissible inference concerning this piece of evidence, the Court must draw all inferences concerning the new hires in favor of non-movant NMG.

disagrees. When read in context, a reasonable fact-finder could determine Vulpis attempted to accurately project NMG's revenues. Immediately before testifying he "guessed," Vulpis testified he "guestimated" the revenue figures, and further testified his projection considered revenues "from previous years of business." (ECF No. 72-1, at 216:23, 217:13-14.) Combined with his more detailed testimony about how Vulpis considered his divorce, new hires, and his medical condition when projecting revenue on the Application, and viewed in the light most favorable to NMG, genuine issues of material fact exists concerning whether Vulpis failed to make a good faith attempt to project NMG's revenue.

### 2. Independent Contractors

Atain argues it is entitled to summary judgment because a second, unrelated misrepresentation on the Application—Vulpis's statement claiming NMG did not use subcontractors or independent contractors—warrants rescission of the Policy. Pachner[7] argues the Court should grant summary judgment against Atain on this ground because NMG accurately represented it did not use independent contractors. Pachner also argues summary judgment is appropriate against any claim Pachner negligently (1) advised Vulpis to answer "no" to the question on the Application asking about NMG's use of subcontractors or independent contractors or (2) misidentified Manchester as an independent contractor when communicating with Atain. The Court rejects all these arguments because the evidence creates genuine issues of material fact concerning whether NMG (1) knowingly misrepresented its use of independent contractors, and (2) used independent contractors at all.[8]

---

[7]   Manchester joins Pachner's arguments. (ECF No. 80, at 19.) NMG, Vulpis, and Enberg also join Pachner's arguments. (ECF No. 86, at 30.)

[8]   Because these two genuine issues of material fact preclude summary judgment on these issues for both Atain and Pachner, the Court need not decide (1) whether principles of preclusion or estoppel require the Court to treat the guides as independent contractors for purposes of this litigation, nor (2) whether NMG's representation concerning subcontractors

### i. Knowing Misrepresentation

Distinguishing independent contractors from employees is among the most contentiously litigated issues in courts today, arising in a host of different contexts, each with a different standard.[9] The variety of tests creates a "paradoxical truth that even when the same person performs the same acts at the same time in the same place under the same conditions," the person "may be considered an employee for one purpose and an independent contractor for another." *EEOC v. Zippo Mfg. Co.*, 713 F.2d 32, 35-36 (3d Cir. 1983) ("paradoxical truth"); *Hoag v. Brown*, 935 A.2d 1218, 1228 (N.J. Super. Ct. App. Div. 2007) ("may be considered").

Given the issue's complexity, the Court is not surprised Vulpis's testimony suggests he had genuine difficulty distinguishing between employees and independent contractors. Vulpis's testimony concerning his thinking at the time demonstrates his confusion. For instance, Vulpis

---

and independent contractors was material to the particular risk assumed by Atain.

[9] In the copyright context, a work is "made for hire" if the work's author or creator is an "employee" under a non-exhaustive thirteen-factor test derived from the common law of agency. *See Cmty. for Creative Non-Violence v. Reid* ("*CCNV*"), 490 U.S. 730, 751 (1989). The Fair Labor Standards Act regulates the wages of individuals who meet a six-factor, totality-of-the-circumstances test focusing on the "economic reality" of the employer-employee relationship. *See Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 229-30 (3d Cir. 2019). The Americans with Disabilities Act covers businesses with a minimum number of "employees" as determined by a *different* six-factor, totality-of-the-circumstances test, focusing on the employer's right to control the employee. *See Clackamas Gastroenterology Assocs. v. Wells*, 538 U.S. 440, 449-50 (2003). New Jersey's Conscientious Employee Protection Act protects a person from retaliation against whistle-blowing if the person is an "employee" under the totality of the circumstances after analyzing a three-consideration, twelve-factor test analyzing both the employer's right to control the employee and the economic realities of the employer-employee relationship. *See D'Annunzio v. Prudential Ins. Co. of Am.*, 927 A.2d 113, 120-22 (N.J. 2007). When distinguishing employees from independent contractors in the context of federal employment taxes, the U.S. Tax Court, the Internal Revenue Service, and the Court of Federal Claims each use a different test. The Tax Court considers seven factors while the IRS considers twenty, and the Court of Federal Claims adopts the *Reid* test from copyright law. *See Ewens & Miller, Inc. v. Comm'r*, 117 T.C. 263, 270 (2001); *Consol. Flooring Servs. v. United States*, 38 Fed. Cl. 450, 455 (1997) (quoting *CCNV*, 490 U.S. at 751-52); Rev. Rul. 87-41, 1987-1 C.B. 296, 298-299). This is not an exhaustive list.

described his guides as "1099 employees," something of a misnomer.[10]  (ECF No. 86-14 ¶ 17.)

When completing the Application, Vulpis discussed how to answer the "independent contractor" question with Donald Pachner, whose less-than-illuminating explanation was to describe the meaning of independent contractor as a "gray area."  (ECF No. 72-1, at 221:19-222:17.)  Even when answering interrogatories in this case—presumably with the assistance of counsel—Vulpis initially described his guides as independent contractors, then amended his answer to strike that characterization.  (ECF No. 72, at 19:7-23:20.)  The Application does not instruct the applicant on the meaning of "independent contractor," nor does it suggest which (if any) of the legal tests an applicant should apply—missing an opportunity to dispel Vulpis's confusion.  (ECF No. 70-17, at ATN00034.)

Viewed in the light most favorable to non-movant NMG, a reasonable fact-finder could determine Vulpis merely failed to appreciate every nuance of the difference between employees and independent contractors when he wrote on the Application NMG did not use independent contractors or subcontractors.  Such a misunderstanding would constitute an "honest mistake," not a "lie" or a "willful" falsification.  *Rutgers*, 945 A.2d at 1035; *Longobardi*, 582 A.2d at 1261.  Drawing all inferences in non-movant NMG's favor, a genuine issue of material fact remains concerning whether Vulpis knowingly misrepresented NMG's use of independent contractors.

### ii.    Independent Contractors vs. Employees

While Atain is not entitled to summary judgment on its claim concerning Vulpis's knowing misrepresentation of his use of independent contractors, neither is Pachner entitled to summary judgment against Atain on the same issue.  Pachner argues Vulpis's representation was

---

10 A business uses IRS Form W-2 to report payments to an employee, but uses IRS Form 1099 to report payments to a non-employee independent contractor.  *See Hopkins v. Duckett*, Civ. No. 02-5589, 2006 WL 3373784, at *4 & n.2 (D.N.J. Nov. 21, 2006).

accurate because NMG's guides were not independent contractors. A host of evidence suggests the opposite. For instance, Vulpis deducted over $10,000 for "cost of contract labor" and "subcontractors" on the 2015 federal income tax form (and corresponding worksheet) covering NMG's profit and loss. (ECF No. 70-19, at sch. C, line 11.[11]) Manchester testified NMG classified its guides as "subcontractors" in its accounting software. (ECF No. 70-7, at 54:12-20.) Manchester further testified Vulpis repeatedly used the term "independent contractor" to describe guides. (ECF No. 70-7, at 54:23-55:8.) Viewed in the light most favorable to non-movant Atain, this evidence creates a genuine issue of material fact concerning whether NMG's guides were in fact independent contractors.

### iii. Pachner's Advice to Vulpis

Pachner also argues summary judgment is appropriate against any claim concerning Pachner's negligent advice to Vulpis to answer "no" to the question on the Application asking about NMG's use of subcontractors or independent contractors. However, as Pachner points out, Pachner's negligence in this instance "is only relevant insofar [as] Atain is seeking to rescind the Policy based on [NMG's] answer" concerning independent contractors or subcontractors. (ECF No. 73-2, at 19.) Because genuine issues of material fact exist concerning whether Atain may rescind the Policy on the basis of NMG's use of independent contractors, *see* part III.C.2.i., *supra*, the same genuine issues of material fact necessarily exist concerning Pachner's alleged negligent advice to Vulpis concerning this question. Accordingly, the Court cannot grant summary judgment on this ground.

---

11 The Court reminds the parties of their obligation to redact social security numbers and tax identification numbers from filings, including copies of tax returns attached as exhibits. *See* Fed. R. Civ. P. 5.2(a). The parties shall coordinate with the assigned magistrate judge to bring all non-compliant filings into compliance with this rule.

### iv. Pachner's Misidentification of Manchester as a Contractor

Pachner asks the Court to grant summary judgment on any claim concerning Pachner's negligent mislabeling of Manchester as an independent contractor when Pachner first reported Manchester's Injury to Atain. The Court cannot grant summary judgment. As with Pachner's advice to Vulpis, Pachner's statement to Atain identifying Manchester as an independent contractor relates only to Atain's claim for rescission of the Policy for NMG's misrepresentation of its use of independent contractors. Because genuine issues of material fact exist concerning whether Atain may rescind the Policy on this basis, *see* part III.C.2.i., *supra*, the same genuine issues of material fact exist concerning Pachner's characterization to Atain of Manchester as an independent contractor. Accordingly, the Court cannot grant summary judgment on this ground.

### 3. Training and Education Relating to "Search and Rescue" Operations

Atain also argues NMG committed a knowing misrepresentation when it failed to disclose its training and education programs concerning search and rescue operations. The Court declines to grant summary judgment on this claim, because Atain did not plead this claim in its complaint.

"Each and every claim for relief that a plaintiff seeks to press must be set forth in the Complaint." *Bravo v. Union Cty.*, Civ. No. 12-2848, 2013 WL 2285780, at *8 (D.N.J. May 23, 2013). Failure to do so has consequences. One consequence is that this Court may not "grant[] summary judgment on a claim that was never pleaded." *Day v. White*, 764 F. App'x 164, 166 (3d Cir. 2019) (quoting *Michelson v. Exxon Rsrch. & Eng'g Co.*, 808 F.2d 1005, 1009 (3d Cir. 1987)). "To the extent the plaintiff discovers new information giving rise to additional claims, the plaintiff must amend the Complaint to assert those claims and properly put the defendant on notice of them." *Bravo*, 2013 WL 2285780, at *8; *see also Tavarez v. Twp. of Egg Harbor*, Civ.

No. 09-6119, 2012 WL 13186197, at *4 (D.N.J. Aug. 3, 2012); *Durham v. Vekios*, Civ. No. 09-5376, 2011 WL 3667560, at *4 (D.N.J. Aug. 22, 2011).

Atain contends it "asserted a cause of action for rescission based upon material misrepresentation" in its complaint, which Atain argues is broad enough to cover any misrepresentation relating to NMG's training and education programs concerning search and rescue. (ECF No. 93, at 29.) The Court disagrees because Atain's "Material Misrepresentation" claim—Count Six[12]—alleges only a material misrepresented concerning NMG's engagement in "Ropes/Challenge Course Facilitation." (ECF No. 1 ¶¶ 52-59.) Count Six does not mention search and rescue, much less allege a material misrepresentation relating to NMG's education and training concerning search and rescue operations.

Atain further argues it did not learn of the misrepresentation concerning search and rescue operations until well into the discovery period of this litigation. This fact does not excuse Atain from seeking to amend its complaint. If Atain learned late in the litigation it had an additional claim of which it was previously unaware, its appropriate course was to seek leave to amend its complaint to add the new claim. *See Bravo*, 2013 WL 2285780, at *8. Atain did not do so. Because Atain's complaint does not plead any claim related to search and rescue operations, Atain may not obtain summary judgment on this unpleaded claim. *See Day*, 764 F. App'x at 166.

However, even if Atain did plead this claim, a genuine issue of material fact precludes summary judgment concerning whether NMG knowingly failed to disclose its education and training programs concerning search and rescue operations. The record contains evidence Vulpis

---

12 Atain does not contend Count Seven, a claim under the New Jersey Insurance Fraud Prevention Act, N.J. Stat. Ann. § 17:33A-1 *et seq.*, covers the claim for misrepresentation concerning the training and education programs for search and rescue operations. (ECF No. 93, at 28-33.)

and Enberg both believed these activities were no different than NMG's other activities NMG had already disclosed on NMG's initial Application. (ECF No. 86-14 ¶¶ 37-42; ECF No. 86-15 ¶¶ 3-6.) Viewed in the light most favorable to non-movant NMG, this evidence[13] is sufficient to create a genuine issue of material fact.

### 4. Ratification of the Policy

Pachner[14] argues the Court should grant summary judgment against Atain on its claim for rescission because Atain has ratified the Policy. The Court disagrees because (1) the Federal Rules of Civil Procedure prohibit this Court from construing the allegations in one claim as an admission against an alternative or inconsistent second claim, and (2) the evidence conflicts concerning whether Atain's actions constitute ratification of the Policy.

### i. Ratification by Lawsuit

First, Pachner argues Atain cannot file a lawsuit demanding both to disclaim coverage or, in the alternative, to rescind the Policy. Doing so, Pachner argues, constitutes ratification of the Policy and bars rescission. *See Merchants Indem. Corp. v. Eggleston*, 179 A.2d 505, 514 (N.J.

---

13  The Court rejects Atain's argument asking the Court to disregard Vulpis's and Enberg's declarations as "conclusory, self-serving affidavits . . . insufficient to withstand a motion for summary judgment." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)). Vulpis's and Enberg's declarations "detail[] the specific circumstances" surrounding NMG's education and training programs concerning search and rescue operations, rendering the declarations far from conclusory. *Kirleis*, 560 F.3d at 161. Notwithstanding any arguable inconsistencies with his deposition testimony, Enberg's declaration is not so unbelievable that "the [C]ourt, based on all of the evidence, can say with confidence that a rational trier of fact could not credit" Enberg's declaration. *United States v. 717 S. Woodward Street*, 2 F.3d 529, 534 (3d Cir. 1993). Both Vulpis's and Enberg's declarations (like all declarations) are self-serving, but this is no reason to disregard them entirely. *See Paladino v. Newsome*, 885 F.3d 203, 209 (3d Cir. 2018). Accordingly, the Court must consider Vulpis's and Enberg's testimony, and their testimony creates a genuine issue of material fact precluding summary judgment.

14  Manchester joins Pachner's arguments. (ECF No. 80, at 19.) NMG, Vulpis, and Enberg also join Pachner's arguments. (ECF No. 86, at 30.)

1962). Assuming without deciding New Jersey law treats an action to disclaim coverage as a ratification of the Policy and thus prohibits a claim for rescission, Pachner is still not entitled to summary judgment because "[t]he Federal Rules of Civil Procedure permit parties to file pleadings containing inconsistent factual and legal allegations." *W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 316 (3d Cir. 2003).

"A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). For instance, a plaintiff may simultaneously plead claims for both breach of contract (which requires the existence of a contract) and unjust enrichment (which requires the non-existence of a contract). *See Hughes v. TD Bank, N.A.*, 856 F. Supp. 2d 673, 680 n.4 (D.N.J. 2012); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 528-29 (D.N.J. 2008); *cf. Showalter v. Brubaker*, 283 F. App'x 33, 36 (3d Cir. 2008) (permitting defendants in a civil rights action under 42 U.S.C. § 1983 to simultaneously plead both (1) they are entitled to governmental immunity and (2) their actions were wholly private and therefore not under color of state law).

Importantly, this allowance for inconsistent claims "has been interpreted to mean that a court 'may not construe [a plaintiff's] first claim as an admission against another alternative or inconsistent claim.'" *Indep. Enters. v. Pitt. Water & Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir. 1997) (quoting *Henry v. Daytop Village*, 42 F.3d 89, 95 (2d Cir. 1994)). For instance, a claim for abuse of process does not implicitly concede the legitimacy of a prosecution so as to invalidate a simultaneous claim for malicious prosecution. *See Evans v. City of Newark*, Civ. No. 14-120, 2016 WL 2742862, at *5 n.7 (D.N.J. May 10, 2016).

Atain's claims are subject to this rule. Assuming without deciding a claim to disclaim coverage and a claim to rescind the Policy are inconsistent under New Jersey law, the Federal

Rules of Civil Procedure permit Atain to make both claims simultaneously. Accordingly, Atain's claim for disclaimer of coverage does not constitute a ratification of the Policy.

## ii.     Ratification by Action

Second, Pachner argues Atain's actions constitute ratification of the contract. Genuine issues of material fact preclude the issuance of summary judgment on this ground.

"[T]he remedy [of rescission] is discretionary and will not be granted where the claimant has not acted within a reasonable time or where there has been substantial performance." *Farris v. Cty. of Camden*, 61 F. Supp. 2d 307, 336 (D.N.J. 1999) (quoting *Notch View Assocs. v. Smith*, 615 A.2d 676, 680 (N.J. Super. Ct. Law Div. 1992)); *see also Rowen Petrol. Props., LLC v. Hollywood Tanning Sys., Inc.*, Civ. No. 08-4764, 2011 WL 6755838, at *10 (D.N.J. Dec. 23, 2011) (same). "[W]here a party 'is cognizant of fraud or misrepresentation and fails to promptly rescind the . . . agreement or transaction, and instead engages in conduct which assumes the validity of the [agreement], then the agreement or transaction may be deemed ratified.'" *Everest Nat'l Ins. Co. v. Sutton*, Civ. No. 07-722, 2008 WL 3833586, at *8 (D.N.J. Aug. 13, 2008) (quoting *Notch View*, 615 A.2d at 685).

Pachner argues Atain received notice of its potential grounds for rescission on or before November 30, 2015, when Atain received an e-mail with a description of the events leading to Manchester's Injury and a discussion of how Manchester was an "independent contractor" for NMG. (ECF No. 73-43, at Atain 73-75.) Assuming without deciding this e-mail put Atain on notice of its potential grounds for rescission,[15] the evidence of ratification following this date is mixed, precluding summary judgment.

_____

15 Atain argues the relevant date is January 5, 2016, when NMG received a letter from Manchester's attorneys providing a notice of claim. (ECF No. 85-5, at 2.)

For instance, Atain issued a "Notice of Conditional Renewal" to NMG on January 6, 2016, "to advise that [Atain is] agreeable to renewing this policy subject to" new terms and conditions and a rate increase. (ECF No. 73-45, at 1.) This explicit statement suggests Atain treated the Policy as valid. However, this evidence of ratification is tempered by testimony from Atain's former director of director of underwriting for recreational programs, Grace Cunningham, who noted Atain issued the conditional renewal "until [Atain] received more information about the claim." (ECF No. 73-16, at 270:10-11.) Cunningham also testified, "We rescinded this," after Atain learned more. (ECF No. 73-16, at 270:16-19.)

Other evidence is also ambiguous. Although, Atain appears to have kept the Policy premium[16] rather than refund it to NMG, the normal course of rescission litigation appears to allow an insurer to maintain the premium while litigation is pending, and to refund the policy-holder after the litigation is successful. *See, e.g.*, *Liebling v. Garden State Indem.*, 767 A.2d 515, 465 n.1 (N.J. Super. Ct. App. Div. 2001). Additionally, Atain negotiated an explicit agreement with Vulpis, Enberg, and NMG to allow Atain to follow this procedure. (ECF No. 70-13, at ATN000051, ATN000068.) Under these circumstances, the Court cannot say Atain's retention of the Policy premium necessarily demonstrates Atain ratified the Policy.

The record also contains contrary evidence suggesting Atain did not act to ratify the Policy, but instead acted with diligence concerning the possibility of rescinding the Policy. For example, Atain wrote a letter to NMG on February 23, 2016, in which it sought to reserve its right to rescind the Policy. (ECF No. 73-44, at 2.) Likewise, Atain negotiated and, on August 8,

---

16  The record is ambiguous on this point. When asked whether, after Manchester's Injury, Atain retained NMG's Policy premiums or returned them to NMG, Atain's representative testified, "I don't believe so. I don't know for sure. I can't verify." (ECF No. 73-18, at 149:14-15.) For the purpose of Pachner's motion, the Court assumes Atain did not refund the Policy premium to NMG in light of Atain's argument claiming Atain may retain the premium without forfeiting Atain's right to rescission. (ECF No. 85, at 13-14.)

2016, executed non-waiver agreements with Vulpis, Enberg, and NMG to protect Atain's right to seek rescission of the Policy. (ECF No. 70-13, at ATN000049-53, ATN000066-70.) And, of course, Atain filed this action on August 23, 2016. (ECF No. 1, at 21.) Pachner points to deficiencies in Atain's reservation-of-rights letter, but no matter the deficiencies, the letter, non-wavier agreement, and declaratory judgment action are not the acts of a company taking action to ratify the Policy. *Cf. Annito v. Trump Marina Hotel Casino*, No. L-5622-02, 2005 WL 4344137, at *8 (N.J. Super. Ct. App. Div. July 25, 2006) ("By paying his casino debts when he was sober, plaintiff ratified his prior promises to repay the loans, even if they were made while he was intoxicated and not competent to contract.").

However, the most important evidence is missing. Pachner's critical argument is Atain ratified the Policy by failing to act promptly after learning of the potential grounds for rescission as a result of the November 30, 2015 e-mail. (ECF No. 73-43, at Atain 73-75.) Pachner does not point to any evidence—other than the mere passage of time—showing Atain failed to follow-up on the e-mail or to investigate the potential grounds for rescission the e-mail raised. Coupled with the ambiguous or contrary evidence above, a genuine issue of material fact exists concerning whether Atain ratified the Policy. Accordingly, the Court cannot grant summary judgment against Atain on its claim for rescission.

### D. Failure to Maintain Signed Liability Waivers

Atain's final argument is NMG's failure to comply with a coverage condition—namely, obtaining a signed waiver and release of liability from all participants in NMG's activities, and maintaining the signed document for three years—relieves Atain from its obligation to cover NMG's exposure to Manchester's underlying litigation. The Court rejects this argument because

a genuine issue of material fact exists concerning whether the loss of Manchester's waiver form appreciably prejudices Atain's defense of Manchester's underlying state court litigation.

New Jersey law permits an insurer to escape liability for its obligations under an insurance policy if the insured breaches a condition of coverage, but only if the insurance carrier suffers appreciable prejudice from the breach. *See, e.g.*, *Gazis v. Miller*, 847 A.2d 591, 595 (N.J. Super. Ct. App. Div. 2005). When determining the existence of appreciable prejudice, a court must consider two factors. "[F]irst, 'whether substantial rights have been irretrievably lost' as a result of the insured's breach, and second, 'the likelihood of success of the insurer in defending against the accident victim's claim' had there been no breach." *Hager v. Gonsalves*, 942 A.2d 160, 164 (N.J. Super. Ct. App. Div. 2008) (quoting *Sagendorf v. Selective Ins. Co. of Am.*, 679 A.2d 709, 715 (N.J. Super. Ct. App. Div. 1996)); *see also Ohaus v. Continental Cas. Ins. Co.*, 679 A.2d 179, 185 (N.J. Super. Ct. App. Div. 1996).

The insurer bears the burden of demonstrating appreciable prejudice. *See, e.g.*, *Kenny v. N.J. Mfrs. Ins. Co.*, 746 A.2d 57, 59 (N.J. Super. Ct. App. Div. 2000). The existence of appreciable prejudice is generally a question for the finder-of-fact, and generally not appropriate for summary judgment. *See, e.g.*, *State Nat'l Ins. Co. v. Cty. of Camden*, 10 F. Supp. 3d 568, 582-83 (D.N.J. 2014).

A genuine issue of material fact exists concerning whether the loss of Manchester's misplaced waiver form will appreciably prejudice Atain. First, the record is not clear whether Manchester's waiver form—and therefore, Atain's ability to defend the underlying state court litigation using Manchester's waiver—has been "irretrievably lost." *Hager*, 942 A.2d at 164. Although NMG cannot locate the waiver at present, Atain points to no evidence NMG will be unable to locate the waiver in the future. In fact, NMG indicates it will willing to allow opposing

counsel access to its physical files to conduct its own search for Manchester's missing waiver. (ECF No. 86-2 ¶ 5.)  Atain does not indicate it has accepted NMG's offer.

Second, even if Atain cannot obtain Manchester's waiver in time to rely on the waiver against Manchester in the underlying state court litigation, the absence of Manchester's waiver will not necessarily reduce "the likelihood of success of the insurer in defending against the accident victim's claim."  *Hager*, 942 A.2d at 164.  NMG has provided Atain with Manchester's signed acknowledgment of receipt (ECF No. 86-4, at 1) of NMG's employee handbook, which contains a waiver form (ECF No. 86-3, at 22-24).  Moreover, while Vulpis acknowledged he could not locate the forms, Vulpis testified Manchester had previously signed a waiver (1) when Manchester initially became was a customer of NMG prior to serving as a guide, and (2) for the year 2015, when Manchester served as a guide.  (ECF No. 72, at 55:13-56:3, 87:1-6.)  The only contrary evidence is Manchester did not sign a waiver on the day of the Injury.  (ECF No. 72, at 99:18-100:4; ECF No. 70-8, at 161:23-162:1.)  Atain points to no evidence contradicting Vulpis's testimony concerning Manchester previously signing a waiver before the day of the Injury.  Viewing the facts in the light most favorable to NMG, a genuine issue of material fact exists concerning whether NMG's loss of Manchester's waiver will appreciably prejudice Atain's defense of Manchester's underlying state court litigation.

### E.    Pachner's Insurance Producer Licenses

Pachner argues it is entitled to summary judgment on any negligence claim relating to Pachner's failure to maintain insurance producer licenses.  No party opposes Pachner's argument.  Assuming without deciding Pachner owes a duty to its clients or third parties to maintain appropriate licenses as an insurance producer, the uncontested evidence demonstrates Pachner in fact possessed the requisite licenses at the time he assisted NMG with its search for

insurance coverage.  (ECF No. 73-31, at 1-2.)  Therefore, there is no genuine dispute of material fact concerning Pachner's licensure, and Pachner is entitled to summary judgment on this claim.

### F.      Pachner's Explanation of the Policy to NMG

Pachner argues the Court should grant summary judgment against NMG's claims relating to Pachner's failure to explain mountaineering-related terms in the Policy or the Application. The Court declines to grant summary judgment because a genuine issue of material fact remains concerning whether Pachner fulfilled his obligations to NMG as a broker.[17]

An insurance broker's obligations are "(1) to procure the insurance; (2) to secure a policy that is neither void nor materially deficient; and (3) to provide the coverage he or she undertook to supply."  *President v. Jenkins*, 853 A.2d 247, 569 (N.J. 2004).  "[A]n insurance broker owes a duty to his principal to exercise diligence in obtaining coverage in the area his principal seeks to

---

[17] As part of its argument, Pachner contends the testimony of Grace Cunningham is irrelevant because Cunningham was not designated as Atain's organizational representative under Federal Rule of Civil Procedure 30(b)(6) and because she did not work at Atain at the time of her deposition.  Accordingly, Pachner argues, the Court should disregard not only Cunningham's testimony but other evidence relying on Cunningham's testimony.  The Court disagrees.  Cunningham's testimony is relevant to this case and the Court will consider it.

A person need not be an organizational representative under Rule 30(b)(6) nor still employed with a defendant to provide relevant testimony.  *Cf. Lacey v. Cessna Aircraft Co.*, 932 F.3d 170, 183 (3d Cir. 1991) (observing "many potentially relevant witnesses may no longer be employed by" a defendant company).  Testimony is relevant to the extent "(a) it has any tendency to make a fact more or less probable than it would be without [her testimony]; and (b) the fact is of consequence in determining [this] action."  Fed. R. Evid. 401.

Pachner does not argue any particular item of Cunningham's testimony fails to meet this definition.  Instead, Pachner argues only the Court should wholesale disregard Cunningham's entire testimony because none of it can be relevant if Atain no longer employs Cunningham.  The Court cannot agree.  As the director of underwriting for recreational programs at Atain when NMG contracted with Atain under the Policy, Cunningham was personally involved with Atain's issuance of the Policy to NMG.  (ECF No. 70-20, at 12:22-13:6, 32:19-23.) Given her position and personal involvement, the Court cannot say her testimony is entirely irrelevant.  Accordingly, the Court considers both Cunningham's testimony and other evidence relying on her testimony.

be protected." *Satec, Inc. v. Hanover Ins. Grp.*, 162 A.3d 311, 317 (N.J. Super. Ct. App. Div. 2017) (quoting *Werrmann v. Aratusa, Ltd.*, 630 A.2d 302, 304 (N.J. Super. Ct. App. Div. 1993)). A broker's failure to inform a client about critical facts related to the client's pursuit of insurance can constitute a breach of the broker's duty. *See Brill v. Guardian Life Ins. Co. of Am.*, 666 A.2d 146, 157 (N.J. 1995).

### 1. Subjective vs. Objective Understanding of Policy Terms

Pachner is not entitled to summary judgment concerning whether Pachner failed to explain certain mountaineering-related terms. The report of NMG's expert Frank Seigel explains Pachner breached an insurance broker's duty because Pachner "should have been familiar with how Atain handled and considered 'mountaineering' and 'guided mountaineering' and whether or not those terms, in Atain's eyes, included the assembly and use of a Tyrolean Traverse." (ECF No. 80-4, at 13.) Pachner argues Atain's subjective understanding of these contested terms is irrelevant because of "the general rule that the terms in an insurance policy should be interpreted in accordance with their plain and commonly-understood meaning," not the subjective meaning of the insurer. *Cypress Point Condo. Ass'n v. Adria Towers, LLC*, 143 A.3d 273, 286 (N.J. 2016).

This argument does not entitle Pachner to summary judgment. Pachner is correct that courts must "first consider the plain meaning of the language at issue." *N.J. Transit Corp. v. Underwriters at Lloyd's, London*, ___ A.3d ___, 2019 WL 6109144, at *4 (N.J. Super. Ct. App. Div. Nov. 18, 2019). But the plain language analysis is only one part of the approach to the interpretation of insurance contracts. Courts' "goal in interpreting [insurance] policies is to 'discover the intention of the parties[,]' by considering 'the contractual terms, the surrounding circumstances, and the purpose of the contract.'" *Id.* at *5 (quoting *Marchak v. Claridge*

*Commons, Inc.*, 633 A.2d 531 (1993). Atain's subjective understanding of these terms is relevant to "discover[ing] the intention of the parties." *Id.*

### 2. Vulpis's Reliance on Pachner's Information

Pachner also argues none of the Pachner entities breached any duty to inform NMG about relevant Policy terms because Vulpis testified he did not rely on Pachner for information about these terms. Vulpis's testimony does not entitle Pachner to summary judgment because Vulpis could not have relied on Pachner for information Pachner did not provide, but should have. *Cf. Brill*, 666 A.2d at 157.

### 3. Vulpis's Greater Level of Expertise Compared to Pachner

Pachner further argues Vulpis, as an expert in the mountaineering field, had greater familiarity than Pachner with terms like "mountaineering" and equipment like a "Tyrolean Traverse." Therefore, Pachner argues, NMG had no need for any explanation from an individual like Pachner with a lesser level of expertise than Vulpis. The Court cannot grant summary judgment on this ground. The fact an insured possesses greater knowledge and expertise in a field than the insured's broker does not relieve the broker from "exercis[ing] diligence in obtaining coverage in the area his principal seeks to be protected." *Satec*, 162 A.3d at 317.

### 4. Pachner's and Vulpis's Awareness of NMG's Activities

Pachner next points out Vulpis informed Pachner NMG engaged in "mountaineering" activities and requested insurance for those activities (ECF No. 70-17, at ATN000336), but Vulpis never alerted Pachner that NMG engaged in the Activity. Pachner asks this Court for summary judgment because, the argument goes, Pachner could not reasonably have been expected to procure coverage for an Activity of which it had no knowledge. Pachner also argues summary judgment is appropriate because Vulpis was aware the Policy did not cover the Activity

because the Activity was not a "mountaineering" activity.  The same genuine issue of material fact—namely, the conflicting evidence concerning whether the Activity qualified as a "mountaineering" activity (ECF No. 72-1, at 253:19-24; ECF No. 70-20, at 18:8-13; ECF No. 70-8, at 20:20-21:4)—precludes the entry of summary judgment on both grounds.

### G.    Pachner's Failure to Recommend Workers' Compensation Insurance

Pachner asks the Court to grant summary judgment on NMG's claim related to Pachner's failure to procure workers' compensation insurance, as required by law.  The Court cannot grant summary on this basis because genuine issues of material fact exist concerning whether (1) Pachner attempted to procure workers' compensation insurance for NMG and (2) workers' compensation insurance would have protected either NMG or Manchester.

An insurance broker's obligations are "(1) to procure the insurance; (2) to secure a policy that is neither void nor materially deficient; and (3) to provide the coverage he or she undertook to supply."  *President v. Jenkins*, 853 A.2d 247, 569 (N.J. 2004).  "[A]n insurance broker owes a duty to his principal to exercise diligence in obtaining coverage in the area his principal seeks to be protected."  *Satec, Inc. v. Hanover Ins. Grp.*, 162 A.3d 311, 317 (N.J. Super. Ct. App. Div. 2017) (quoting *Werrmann v. Aratusa, Ltd.*, 630 A.2d 302, 304 (N.J. Super. Ct. App. Div. 1993)).  When a client retains a broker to procure insurance, the broker must procure legally mandated workers' compensation insurance.  *See Schustrin v. Globe Indem. Co. of N.Y.*, 130 A.2d 897, 898 (N.J. Super. Ct. App. Div. 1957) (noting the jury's finding that broker was obligated to procure workers' compensation insurance for client).

Pachner argues a broker owes no duty to recommend additional coverage for a client. This argument does not affect the Court's analysis.  Pachner correctly points out New Jersey law imposes "no duty [on an insurance broker] to advise an insured to consider higher amounts of

homeowner's insurance." *Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp.*, 638 A.2d 1288, 1292 (N.J. 1994) (citing *Wang v. Allstate Ins. Co.*, 592 A.2d 527, 532-33 (N.J. 1991)). Assuming without deciding this principle extends to workers' compensation, the principle still does not apply here. NMG does not claim Pachner failed to advise NMG to consider the option of purchasing higher policy limits. Instead, the case concerns an alleged failure by a broker to obtain workers' compensation insurance for a client who was legally mandated to obtain such insurance. (ECF No. 80-4, at 13-14.) Were the Court to adopt Pachner's argument, then NMG would possess a legal obligation to obtain workers' compensation insurance, *see* N.J. Stat. Ann. § 34:15-71 (requiring employers to obtain workers' compensation insurance), but NMG's insurance broker Pachner would have no legal obligation to procure the insurance for NMG. This is not the law in New Jersey. *See Schustrin*, 130 A.2d at 898.

The delineation of a broker's duties does not end the Court's inquiry, because a plaintiff must show more than the failure to procure workers' compensation insurance before liability will attach. "To succeed in an action against an insurance broker, the plaintiff must prove that in addition to being negligent, the broker's negligence was a proximate cause of the loss." *Harbor Commuter Serv., Inc. v. Frenkel & Co.*, 951 A.2d 198, 207 (N.J. Super. Ct. App. Div. 2008). Put another way, the plaintiff must "establish[] that its loss would not have occurred but for defendants' negligence, or that defendants' negligence constituted a substantial contributing factor to the loss." *Id.*

Two genuine issues of material fact preclude summary judgment. First, the record contains conflicting evidence concerning whether Pachner in fact attempted to obtain workers' compensation insurance for NMG. (ECF No. 73-3 ¶¶ 4-5; ECF No. 73-10, at 6; ECF No. 86-14 ¶ 18.) Taking the evidence in the light most favorable to non-movants NMG and Manchester

while making all reasonable inferences in their favor, a reasonable jury could find Pachner did not attempt to obtain workers' compensation insurance for NMG.

The second genuine issue of material fact concerns whether (1) Pachner's failure to procure workers' compensation insurance for NMG either contributed to NMG's and Manchester's loss or (2) their loss would not have occurred had NMG purchased workers' compensation insurance. As discussed earlier, genuine issues of material fact remain concerning whether Manchester qualified as an employee or an independent contractor. *See* part III.B., *supra*. Given this uncertainty, the record does not conclusively demonstrate whether or not workers' compensation insurance would have covered Manchester's Injury. Viewing this uncertainty in the light most favorable to non-movants NMG and Manchester while making all reasonable inferences in their favor, a reasonable jury could find Pachner's failure to procure workers' compensation insurance for NMG either contributed to NMG's and Manchester's loss, or their loss would not have occurred but for Pachner's failure. In light of the two genuine issues of material fact, the Court cannot grant summary judgment against NMG's and Manchester's claims related to Pachner's failure to procure workers' compensation insurance for NMG.

### H.    Pachner's Failure to Provide a Copy of the Policy

Pachner requests summary judgment on any claim it negligently failed to provide NMG with a copy of the Policy. The Court cannot grant summary judgment in light of the conflicting evidence.

An insurance broker has a duty to provide its client with any policy it receives from the insurer within 10 days of receipt by the broker. *See* N.J. Admin Code § 11:17A-4.6. According to Pachner, when "Pachner & Associates received a copy of the Policy, we made it available to NMG through our web portal." (ECF No. 73-3 ¶ 13.) Vulpis testified that he never received the

Policy until after Manchester's Injury. (ECF No. 72, at 112:16-25.) In light of the conflicting evidence, a genuine issue of material fact precludes summary judgment.

Pachner argues even if Pachner did not provide Vulpis with a copy of the Policy, Pachner's failure did not proximately cause any of NMG's damages because Vulpis received a copy of the Quote. (ECF No. 72-1, at 233:21-236:8.) A genuine issue of material fact also precludes summary judgment on this basis. "To succeed in an action against an insurance broker, the plaintiff must prove that in addition to being negligent, the broker's negligence was a proximate cause of the loss." *Harbor Commuter Serv., Inc. v. Frenkel & Co.*, 951 A.2d 198, 207 (N.J. Super. Ct. App. Div. 2008). Put another way, the plaintiff must "establish[] that its loss would not have occurred but for defendants' negligence, or that defendants' negligence constituted a substantial contributing factor to the loss." *Id.*

A genuine issue of material fact exists concerning whether Pachner's failure to provide the Policy to NMG substantially contributed to NMG's loss by depriving Vulpis of important Policy details that would have prompted Vulpis to make inquiries about, and adjustments to, NMG's insurance. The Policy contains substantially more details about coverage than the Quote. For instance, while the Quote merely mentions the insurance "Excludes Injury to Employees, Leased Workers, Volunteers, and Independent Contractors," the Policy actually defines several of these terms. (ECF No. 73-37, at 2; ECF No. 70-5, at ATN000373-76.) Unlike the Quote, the Policy spells out the exact terms of the exclusion for injury to employees or independent contractors. (ECF No. 70-5, at ATN000383.) Making all reasonable inferences in favor of non-movant NMG, a reasonable jury could find Vulpis would use the more detailed information in the Policy to inquire about his insurance and adjust it so as to explicitly cover incidents like the

one in which Manchester suffered an Injury.  Accordingly, the Court cannot grant summary judgment.

## I.    Pachner's Duty to Manchester

Pachner asks this Court to grant summary judgment against Manchester because New Jersey law precludes Manchester from bringing an action against Pachner until Manchester obtains a judgment against NMG and the judgment is returned unsatisfied.[18]  The Court disagrees because Manchester is a foreseeable injured third-party to whom Pachner, a broker, owes a duty.  *See Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp.*, 638 A.2d 1288, 1297-98 (N.J. 1994).

"[A]n insurance broker may owe a duty of care not only to the insured who pays the premium and with whom the broker contracts but to other parties found within the zone of harm emanating from the broker's actions as well."  *Id.* at 1297.  When a broker negligently fails to procure insurance that would cover the injuries of a third-party, the broker owes a duty to the third-party, making the third-party an appropriate plaintiff in a negligence action against the broker.  *See Impex Ag. Commodities Div. Impex Overseas Corp. v. Parness Trucking Corp.*, 576 F. Supp. 587, 591 (D.N.J. 1983) (applying New Jersey law).  Pachner, as a broker, owes a duty to procure appropriate insurance not just to NMG, but also to Manchester—a foreseeable, injured third-party whose Injury NMG expected the Policy to cover.  Because Pachner owes Manchester a duty, Manchester is therefore an appropriate plaintiff in a negligence action.  Accordingly, summary judgment against Manchester on this basis is inappropriate.

---

[18] Pachner characterizes this argument by saying Manchester lacks "standing" to sue Pachner. (ECF No. 73-2, at 25-26; ECF No. 92, at 4-5.)  The Court declines to adopt this phrasing, to avoid confusion with the doctrine of justiciability under Article III of the Constitution.  *See, e.g.*, *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018).  Pachner's underlying argument concerns whether Manchester is an appropriate plaintiff—which, in a negligence action like this, is best analyzed in terms of whether Pachner owes a duty to Manchester.

Pachner argues New Jersey is not a direct action state, meaning an injured third party may not bring an action directly against a tortfeasor's insurance company in lieu of the tortfeasor. *See Manukas v. Am. Ins. Co.*, 237 A.2d 898, 524 (N.J. Super. Ct. App. Div. 1968). But Pachner is not an insurance company against whom Manchester brings an action in lieu of the tortfeasor. Rather, Pachner is the tortfeasor. Manchester brings a negligence action against Pachner for Pachner's negligent failure to obtain appropriate insurance for NMG that would cover Manchester's Injury. Manchester does not bring an action against Pachner in the capacity of an insurer. Therefore, Pachner's "direct action" argument is inapposite.

Pachner further argues New Jersey law imposes a bar against direct actions such as this one until the plaintiff obtains a judgment against the tortfeasor and is unable to execute on the judgment. *See* N.J. Stat. Ann. § 17:28-2. This argument does not entitle Pachner to summary judgment against Manchester for two reasons. First, as previously explained, Manchester has not brought a direct action against an insurer, because Pachner is the tortfeasor, not the tortfeasor's insurer. Second, the statute's language merely imposes a requirement on insurance contracts; it does not limit the circumstances under which a plaintiff may bring a tort action. *See id.* ("No policy of insurance . . . shall be issued or delivered in this state by any insurer authorized to do business in this state, unless [the policy allows the plaintiff to recover directly against the insurer if the tortfeasor is insolvent.]"). Because Manchester is not bringing an action for breach of an insurance contract, the statute has no application here.

Finally, Pachner argues Manchester cannot bring an action against Pachner until it has obtained a judgment against NMG. *See Estate of Atanasoski v. Arcuri Agency, Inc.*, No. A-2291-17T4, 2019 WL 1986539, at *3-6 (N.J. Super. Ct. App. Div. May 6, 2019). Because an action by Manchester against NMG concerning Manchester's Injury is pending in state court, the

appropriate course for this Court would not be to grant summary judgment against Manchester (which would permanently extinguish Manchester's right to recover against Pachner), but to await the outcome of the state court case before issuing any final judgment against Pachner in favor of Manchester.

### J. Action Against Pachner Risk Management

Pachner argues, and the Court agrees, summary judgment is appropriate against Pachner Risk Management ("PRM") because PRM had no relationship with Manchester, Enberg, Vulpis, or NMG, nor was PRM involved in procuring insurance for NMG. No party contests this argument, and the evidence supports it. Donald Pachner testified PRM has always been an inactive company and further testified PRM has never had anything to do with NMG. (ECF No. 73-11, at 126:14-127:5.) When asked whether "there was anything you came across that suggested [PRM] owed or breached any duty to [NMG]," NMG's expert Frank Seigel testified he did not recall any reference to PRM in the file he reviewed. (ECF No. 73-15, at 180:8-23.) Because the undisputed evidence shows PRM had no connection to NMG, Vulpis, or the other parties in this case, the Court will grant summary judgment in favor of PRM.

### K. Donald Pachner as Agent of His Disclosed Principal, Pachner & Associates

Pachner argues the Court should grant summary judgment in favor of Donald Pachner because he cannot be liable for the torts of his disclosed principal Pachner & Associates if Donald Pachner was merely serving as the agent of Pachner & Associates. *See City of Millville v. Rock*, 683 F. Supp. 2d 319, 326-28 (D.N.J. 2010). In light of New Jersey's "participation theory" of principal-agent tort liability, the court disagrees.

Under New Jersey law, the "long-standing rule [is] that '[a]n agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of a

principal or on account of the principal.'"  *Ballinger v. Del. River Port Auth.*, 800 A.2d 97, 110 (N.J. 2002) (quoting Restatement (Second) of Agency § 343 (1958)).  New Jersey law refers to this as the "participation theory" of principal-agent tort liability.

> [T]he essence of the participation theory is that a corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort.  A predicate to liability is a finding that the corporation owed a duty of care to the victim, the duty was delegated to the officer and the officer breached the duty of care by his own conduct.

*Saltiel v. GSI Consults., Inc.*, 788 A.2d 268, 272 (N.J. 2002); *see also Reliance Ins. Co. v. The Lott Grp.*, 776-77 (N.J. Super. Ct. App. Div. 2004).

As the sole member of Pachner & Associates who served as the primary individual responsible for dealing with NMG during NMG's effort to insure its activities, Donald Pachner meets these requirements.  (ECF No. 73-3 ¶ 1; ECF No. 86-14 ¶ 16.)  Accordingly, the Court may not grant summary judgment on this ground.

## IV. CONCLUSION

For the reasons set forth above, Atain's motion is **DENIED** and Pachner's motion is **GRANTED IN PART** in favor of PRM on all claims and in favor of all Pachner parties on any claims relating to Pachner's negligent failure to maintain appropriate licensure and **DENIED IN PART** in all other respects.  An appropriate order will follow.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  January 30, 2020